UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **KNALL BEVERAGE, INC., et al.,** | ) | Case No.  1:12 CV 3125 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **Judge Dan Aaron Polster** |
| v. | ) | |
| | ) | |
| **TEAMSTERS LOCAL UNION NO. 293 PENSION PLAN et al.,** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| Defendants. | ) | |

After reviewing Defendants' motions to dismiss or to stay the case pending arbitration, the Court held a telephone conference with counsel of record on May 2. As the Court announced during the conference, this case will be dismissed without prejudice so that the pending arbitrations—there are three separate arbitrations—can move forward unhindered by this lawsuit. The reasons for dismissal are explained below.

This multi-plaintiff, multi-defendant ERISA ("Employment Retirement Income Security Act") lawsuit is about a multi-employer pension plan: Teamsters Local Union No. 293 Pension Plan. The Pension Plan no longer exists; it was terminated by mass withdrawal of the contributing employers in 2009.

Before the Plan was terminated, in 2007 and 2008, the three plaintiffs—Knall Beverage, Inc., HDT Tactical Systems, Inc., and Beverage Distributors, Inc.—independently reached

agreements with the Plan to withdraw—*i.e.*, to terminate their individual membership with the Plan. Under ERISA, whenever an employer withdraws from a pension fund, it must pay withdrawal liability. 29 U.S.C. § 1381(a). Withdrawal liability is simply the amount that an employer owes the fund; the amount reflects the employer's share of unfunded, but vested, pension benefits. *Id.* at § 1381(b). Knall Beverage's withdrawal liability was $1.5 million, HDT's liability was $2.5 million, and BDI's liability was $4.2 million.[1]

Then, in 2009, the Pension Plan's Board of Trustees decided to terminate the fund entirely by initiating a mass withdrawal of substantially all the remaining employers, including the seven employer-defendants named in this lawsuit. The Trustees wanted to complete the mass withdrawal promptly to ensure the Plan could assess "reallocation liability" against the three plaintiffs.

Reallocation liability under ERISA is the amount owed by an employer that left the pension plan before, but within three years of, a mass withdrawal. 29 U.S.C. § 1399(c)(1)(D). The Trustees wanted to make sure Plaintiffs' prior withdrawals would fall within that three-year window. The purpose of the three-year reallocation liability provision is to deter employers from exiting the pension plan at the first sign of financial trouble and leaving the other employers holding the bag. But reallocation liability is not automatic; it is simply presumed, and the employer can rebut that presumption by a preponderance of the evidence. 29 U.S.C. § 1399(c)(1)(D). In this case, the Trustees assessed substantial reallocation liability against Plaintiffs in the following amounts: $2.4 million against Knall Beverage; $5.6 million against HDT; and $5 million against BDI.

---

[1] They have all paid—or are timely paying based on an installment plan—their liability.

Plaintiffs have been making installment payments on time, but they contend they actually owe zero reallocation liability; they say they paid their fair share when they withdrew in 2007 and 2008. For that reason, they initiated arbitration proceedings against the Plan in late 2010 and early 2011. Apparently unsatisfied with the pace of the arbitration, however, Plaintiffs filed this lawsuit, in which they claim the entire mass-withdrawal was a sham—a scheme to evade or avoid ERISA liability—and therefore null and void. Transactions that seek to evade or avoid ERISA liability are indeed prohibited. 29 U.S.C. § 1392(c).

But the problem with this lawsuit is that ERISA mandates arbitration: "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). A look at the citations above reveals that this case is all about determinations "made under sections 1381 through 1399," including whether a transaction violated section 1392(c).[2] Arbitration should resolve the key issue: whether Plaintiffs were properly assessed reallocation liability and, if so, what are the proper amounts.

Accordingly, the Court hereby **DISMISSES** the case **WITHOUT PREJUDICE** and directs the parties to resume arbitration proceedings, which the parties had previously agreed to postpone because of this lawsuit. The Court further orders that all parties named in this lawsuit cooperate fully with the arbitration proceedings and comply with all discovery requests.

Furthermore, the Court hereby **DISMISSES** the crossclaim and counterclaim asserted by

---

[2]Plaintiffs also assert claims against the Plan's Trustees for breach of fiduciary duty. But ERISA trustees owe a fiduciary duty only to plan participants and beneficiaries, not to employers. 29 U.S.C. § 1104(a). Plaintiffs are therefore not entitled to relief for this claim; their only relief is through arbitration.

Defendant DiGeronimo Aggregates, LLC, as well as the counterclaim asserted by Defendant R.L. Lipton Distributing Company.[3]

**IT IS SO ORDERED.**

                                      */s/ Dan A. Polster 5/3/13*
                                      **Dan Aaron Polster**
                                      **United States District Judge**

---

[3]DiGeronimo asserts a crossclaim against the Trustees. (Doc. # 33 at 30-33). It is not exactly clear, but the claim appears to be either that the Trustees breached their fiduciary duty or that they improperly assessed liability against DiGeronimo. If it is the former, the claim is without merit because, as noted in the previous footnote, ERISA trustees do not owe a fiduciary duty to employers. If it is the latter, arbitration is mandatory. The same is true of DiGeronimo's and R.L. Lipton's counterclaims. (Doc. # 33 at 33-36; Doc. # 53 at 38-41).